KIRBY, J.
The defendant, Neal Ballansaw, was charged by bill of information on July 31, 1998, with possession of cocaine with intent to distribute, a violation of La. R.S. 40:967.[1] At his arraignment on August 7, 1998, he pleaded not guilty. The trial court found probable cause and denied the motion to suppress the evidence on October 22, 1998. After being advised of his right to a jury, the defendant elected a bench trial; on August 11, 1999, he was found guilty of possession of cocaine. Through counsel, Ballansaw waived all legal delays and was sentenced on that same day to serve five years at hard labor; his sentence was suspended, and he was placed on five years active probation with special conditions. The defendant’s motion to reconsider the sentence was denied, and his motion for an appeal was granted.
At trial Sergeant Patrick Brown testified that about 3:40 p.m. on July 27, 1998, he participated in a narcotics investigation near 2329 Soniat Street in which Ballan-saw and Ernest Turner were arrested. The sergeant was supervising a buy/bust operation in which an undercover agent buys contraband and immediately leaves an area; then a backup team moves in to arrest the dealer. Sergeant Brown photocopied the money given to the undercover *658 agent. When Ballansaw was | ¡¡arrested, he had two ten dollar bills which could be identified by serial numbers as those given to the undercover agent. Ballansaw was never seen by the sergeant talking with Turner or with the undercover agent because the sergeant was several blocks away. No drugs or drug paraphernalia were found on Ballansaw or in plain view of the officer when Ballansaw was arrested. After he was detained, a Polaroid photograph wás taken of Ballansaw, and the photo was shown to the undercover agent who recognized the man as the cocaine dealer.
Detective Adam Henry testified that he and his partner, Detective Michael Harrison, were wearing plain clothes and driving an unmarked car on Magnolia Street near Valence Street when they encountered Ernest Turner. The detective said he wanted to buy two dime pieces of crack cocaine, and Turner answered that he had nothing with him, but he offered to take the undercover agent to someone who had the drug. The officer refused to let Turner get in the car, and so Turner jogged the three and one-half blocks to 2329 Soni-at Street where he knocked on the door on the right side of the double. The agents followed in the car. Ballansaw answered the door and he and Turner walked down the side alley of the house. Turner returned to the car with the cocaine, and the detectives gave him twenty dollars. Turner asked for a tip, and Detective Harrison handed him two dollars. The car Detective Henry was driving was equipped with audio and video machines, and the entire episode was captured on tape. As the detectives left the scene, they radioed a description of Turner and Ballansaw to their backup team. The audio and video machines captured the officer’s descriptions. He said that Ballansaw was wearing a multicolored green and white shirt and black jeans, and that he had keys in his hand. On cross-examination, Detective Henry said that he did not see Turner and Ballansaw in a transaction, and he admitted that there was ¡^discrepancy between the police report which indicated that Turner and Ballansaw met in the rear of the building, while he remembered their meeting when Ballansaw answered the door.
The parties stipulated that the substance the detectives purchased was tested and proved to be crack cocaine.
Sergeant Reginald Jacque testified that he acted as surveillance and security cover for the undercover officers during the buy/ bust drug operation. He saw the undercover officers initially speak to Turner and then speak with him again on Soniat Street. Turner went to the door on the right side of the building and knocked. Ballansaw answered the door and spoke briefly with Turner. Ballansaw walked down a side alleyway, and both men disappeared on the left side of the house for a few minutes.
Neal Ballansaw testified that he has no prior convictions, that he was honorably discharged from the army, and that he was employed at a restaurant when he was arrested. On the day in question he was returning from the grocery store to an apartment on the right-hand side of the house on Soniat Street which his mother owned. Ballansaw does the maintenance work on the place. He noticed Turner and a tenant of another apartment in the house on the porch talking. Ballansaw went into an apartment, put food away, and exited. He walked up the driveway to the back apartment and went into the back of the house. The back unit is used for storage; he was there when he heard someone approaching the unit. He opened the door as the officers were about to knock. They pushed him against the wall and began searching the place. The officers asked that he unlock the garage area, which he did. He saw them put money that was “balled up” on top of a table. The officers frisked him again and took the sixty-seven dollars he was carrying. |4His money was “folded over,” not “balled up.” He was carrying a twenty, four tens, a five and two ones. He got the money from funds he *659 had recently received after his mother’s death. Ballansaw denied ever having a conversation with Turner or any of the police officers about drugs. He testified that he never had any drugs in his possession. On cross-examination, Ballansaw stated that the police officers put money on the table that was “folded over” not “crumpled up.” One of the officers “grabbed” the money from the table.
In a single assignment of error, the defendant now argues that the evidence is insufficient to support the conviction because there is no evidence to prove that Ballansaw ever possessed cocaine.
In State v. Ash, 97-2061, pp. 4-5 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 667-668, writ denied, 99-0721 (La.7/2/99) 747 So.2d 15, this court summarized the standard of review that applies when a defendant claims that the evidence produced to convict him was constitutionally insufficient:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact’s determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989). When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proved such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
To support a conviction for possession of narcotics, the State must prove that a defendant knowingly possessed narcotics. State v. Chambers, 563 So.2d 579, 580 (La.App. 4 Cir.1990). The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support conviction. See State v. Trahan, 425 So.2d 1222, 1226 (La.1983); see also State v. Cann, 319 So.2d 396, 397 (La.1975). The mere presence of a defendant in the area where the narcotics were found is insufficient to prove constructive possession. See State v. Collins, 584 So.2d 356, 360 (La.App. 4 Cir.1991).
A person not in physical possession of narcotics may have constructive possession when the drugs are under that person’s dominion and control. State v. Jackson, 557 So.2d 1034, 1035 (La.App. 4 Cir.1990). A person may be deemed to be in joint possession of a drug which is in the physical possession of another if he willfully and knowingly shares with the other the right to control it. State v. Smith, 257 La. 1109, 245 So.2d 327, 329 (1971). Determination of whether a defendant had constructive possession depends on the cir *660 cumstances of each case. State v. Cann, 319 So.2d 396, 397 (La.1976).
After the State presented its case at trial, the defense attorney asked for a directed verdict on the same grounds that the defendant now raises. The judge denied the motion, noting there was obvious evidence to support the conviction of Bal-lansaw. The judge said:
The evidence at least consists of the fact that Mr. Ballansaw is in possession of money that was used in a drug transaction by the officers to Turner. He’s in possession of the same and there’s also evidence of Turner and Ballansaw having contact before the drug is dispensed to the officer. Turner gets money. Turner sees Ballansaw. Turner gives drugs to officers. Officers arrest Turner and Ballansaw. Ballansaw has the money the officers gave Turner; ergo, arguably Ballansaw is participating with Turner in the distribution of drugs.
Before Ballansaw testified, the trial judge found enough circumstantial evidence to link the defendant to the cocaine because the defendant had marked money on his person.
When Ballansaw testified, there was a discrepancy as to whether the marked money had been “balled up” or folded. He said originally that the marked money was balled up or crumpled up on a table. Then when the judge questioned him, Ballansaw said the marked money had been folded over so that the amount did not show. In giving his reasons for finding the defendant guilty of possession of cocaine, the trial judge noted that the defendant lied in his testimony because the marked money offered into evidence had no folds or ripples to indicate that it had been crumpled or balled up.
The evidence offered at trial indicates the defendant possessed cocaine. IvSergeant Jacque testified that he • saw Turner speaking with Ballansaw and then observed the two men walk down an alleyway. Detective Henry testified that Turner, who had twenty dollars of marked money, returned with crack cocaine. Bal-lansaw was in possession of the marked money when he was detained and then arrested. When Ballansaw offered another version of events, the finder of fact rejected Ballansaw’s version as incredible.
Under the jurisprudence, the State produced sufficient evidence to sustain the defendant’s conviction for possession of cocaine. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged sufficient to exclude every reasonable hypothesis of innocence.
This assignment of error is without merit.
Accordingly, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Ballansaw was charged, tried, and convicted with a co-defendant, Ernest Turner.