787 So.2d 1041 (2001)
STATE of Louisiana
v.
Neal A. HEBERT.
No. 2000-KA-1052.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 2001.
*1044 Harry F. Connick, District Attorney, Orleans Parish, Val M. Solino, Assistant District Attorney, Orleans Parish, New Orleans, Counsel for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, Counsel for Defendant/Appellant.
Court composed of Judges JOAN BERNARD ARMSTRONG, CHARLES R. JONES and JAMES F. McKAY, III.
ARMSTRONG, J.

STATEMENT OF THE CASE
On February 26, 1998 the State filed a bill of information charging the defendant and two codefendants[1] with possession with intent to distribute cocaine, a violation of La. R.S. 40:967(B)(1). On March 13, 1998 the defendant pleaded not guilty.[2] After a motions hearing on October 2, 1998 the defense motion to suppress evidence was denied. On August 13, 1999 in writ 99-K-1928 this Court transferred the defendant's motion for speedy trial to the trial court for its consideration within thirty days if the defendant did not go to trial on August 18, 1999. On August 18, 1999 the trial court granted the State a continuance. On September 16, 1999 the court denied the defendant's motion for a speedy trial and granted the State another continuance. On September 20, 1999 trial was held, and the jury found the defendant guilty as charged. After several State continuances a multiple offender hearing was set for February 4, 2000. On that date the trial court sentenced the defendant to fifteen years at hard labor to run concurrently with any other sentence with credit for time served. The defendant filed a motion for a new trial and a motion for post-verdict judgment of acquittal, which were denied. The defendant filed a motion to reconsider sentence, which was denied. The trial court granted his motion for appeal. After the multiple offender hearing was held, the trial court found the defendant to be a triple offender and sentenced the defendant to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence to run concurrently with any other sentence. On appeal, the defendant raises three assignments of error.

*1045 STATEMENT OF THE FACTS

At the September 20, 1999 trial, Police Officer William Ceravolo testified that on December 19, 1997 he was involved in a narcotics investigation. Officer Ceravolo testified that Sgt. Mark Mornay had received information several days before (December 15, 1997 he believed). On December 15, 1997 (based on the original information) and December 18, 1997 (based on additional information) the officers conducted surveillance at 2509 St. Ann Street, apartment A. Officer Ceravolo observed two male subjects and a female subject, who appeared to have control of the residence from which the narcotics were being sold. There were three individuals whom he could identify. He watched as an unknown male approached the defendant, who was standing on the porch of apartment A, and the man gave the defendant what appeared to be currency. The defendant went into the apartment, returned moments later with a small object between his front small three fingers, and handed the small object to the other male, who walked away. Officer Ceravolo said that based on his prior observations and other information, he believed that he had witnessed a narcotics transaction. He also observed codefendant, Ojore Lemar, involved in what appeared to be a hand-to-hand narcotics sale on the same porch.
Officer Ceravolo testified that he obtained a search warrant on December 16, 1997. Upon executing the warrant and entering the apartment at around 12:25 a.m. on December 19th, the officer saw six pieces of crack cocaine sitting on the coffee table in the front room. Personally Officer Ceravolo seized a clear plastic bag containing six individually wrapped clear plastic white compressed rock-like substances commonly known as crack cocaine. The return on the warrant listed: a clear plastic bag containing five rock-like substances; six pieces of white rock-like objects in clear plastic; a large Ziploc bag containing white residue; $264.00 in currency ($60.00 belonged to Neal Hebert); one box of Good Sense sandwich bags; 26-9 mm. Luger unspent rounds; one BellSouth bill in the name of Melinda Hebert; one MCI certificate for $1.50 in her name; Melinda's I.D.; one BellSouth calling card; one .380 caliber blue steel Beretta; and one magazine, one magazine spring, and six live .380 caliber rounds.
On cross-examination Officer Ceravolo stated that Melinda Hebert lived at 2509 St. Ann Street. She was present when the search warrant was executed. The defendant indicated that his address was 2509 St. Ann Street. The officer stated that he found nothing in apartment A with Neal Hebert's name. He found several documents showing that the apartment belonged to Melinda Hebert. There was nothing to show that the defendant lived in that apartment. During surveillance conducted on the night of December 18, 1997, the officer was in an unmarked car, and he was wearing civilian clothes. He was fifty feet away and was positioned across the street. There were other units in the area. Officer Ceravolo saw the defendant, another man, and a small child on the porch; they went in and out of the apartment during the surveillance. The only lighting came from the porch light. He saw what he believed to be a hand-to-hand drug transaction involving cocaine. Officer Ceravolo admitted that he did not see the cocaine.
Officer Ceravolo testified that the defendant, Melinda Hebert's brother, said that he lived upstairs in the back of the residence. Seventeen officers executed the search warrant. When Officer Ceravolo arrived at the apartment to execute the warrant, the defendant was on the front *1046 porch; he was detained there. No contraband was found on the defendant. Another female, who was also on the front porch, was detained, but no contraband was found. The officers all entered through the front door; however, several officers had gone to the side of the house and broken a bathroom window as a diversion. Officer Ceravolo said that the officers had information that there were weapons inside, mostly near the front door for protection reasons. Melinda Hebert's small child was injured (cut requiring stitches) when the officers broke the window. Officer Ceravolo stated that he did not stop any purchasers during the surveillance because of manpower shortages. He had to ask the Eighth District for help in executing the warrant; he used a large number of officers because weapons were involved. The gun was found on the chair right inside the door. Officer Ceravolo stated that the defendant was just standing on the porch when he pulled up to execute the warrant. The officer said that he had already observed the defendant's actions for which he was being stopped and arrested.
On redirect Officer Ceravolo noted that numerous baggies were found inside the apartment. The ends had been cut off; that indicated that the baggies were to be used to package cocaine. That was a common method of packaging. Officer Ceravolo identified a large Ziploc bag with a white powder residue, which had been found in the kitchen near the garbage can. The officer stated that the residue was thought to be cocaine. Officer Ceravolo declared "[a]bsolutely" that the defendant was the person observed to be involved in the hand-to-hand transaction on the porch. On recross-examination Officer Ceravolo said that the defendant had $60.00 in currency, which was seized.
Sgt. Mark Mornay testified that he was involved in the execution of the warrant on December 19, 1997. He encountered the defendant and Gail Knight on the front porch and Melinda Hebert and Ojore Lemar inside. In the first room six pieces of crack cocaine were in plain view on a coffee table. Sgt. Mornay told Lemar that he was under arrest. He asked Lemar to cooperate and asked whether there were weapons in the residence. Lemar first started to the back of the apartment, but then he decided to tell the truth and took the officer to the first room. Under a cushion in the first chair in the apartment the officer found a .380 caliber handgun. He supervised the scene along with Sgt. Glasser.
On cross-examination Sgt. Mornay stated that the defendant lived at 2509½ St. Ann Street; he was seen going in and out of the apartment at 2509 St. Ann Street prior to the officers' arrival. The sergeant said that he arrested Lemar and the others (except for Knight who was released) for being convicted felons in possession of a firearm. The officer noted that a diversion was created by breaking a window on the side of the house with a crowbar or other similar tool. A small child suffered lacerations to the hand and arm. Sgt. Mornay did not recall searching the defendant. No contraband was found on anyone. He established that Lemar and Melinda Hebert resided in the apartment, which was searched.
Officer Joseph Lainez, a narcotics detective, stated that he assisted in the entry of the apartment and securing the persons inside. He located what he believed to be cocaine on the mantelpiece in the second room of the residence. On cross-examination he noted that the defendant was outside on the front porch. He did not personally stop the defendant. Officer Lainez thought that the female Hebert *1047 lived in the apartment. He did not know exactly who lived there.
It was stipulated that if Officer William Giblin, the narcotics expert, had testified, he would have given the findings in his report, which was admitted into evidence. In the report Officer Giblin analyzed two of the State's exhibits. The six pieces of cocaine, the box of sandwich bags, the Ziploc bag with residue, the gun, and the lab report were admitted into evidence. The search warrant was admitted for the record only.
The defense called Walter Hebert, the defendant's father, who testified that he lived at 2509 St. Ann Street with his girlfriend and his son. In 1997 the defendant was living with him. He said that the defendant worked at Orleans Marble and contributed to the family. His daughter, Melinda, and her boyfriend lived downstairs at 2509 St. Ann Street. On cross-examination Walter Hebert admitted that he was not downstairs on December 19, 1997 when the search warrant was executed. He noted that the defendant often went to Melinda's apartment to play with his nephew. Walter Hebert stated that he went downstairs and saw his children in custody. Mr. Hebert took his grandson to Children's Hospital for cuts on his head and his hand.
Melinda Hebert testified that the defendant lived upstairs with her father and his girlfriend. While she was bathing her three year-old son, glass broke, and her son was cut in the head, the hand, and the foot. She claimed that the narcotics belonged to her and her boyfriend, and the defendant did not know that she had drugs in the house. Melinda Hebert said that she was arrested that night and went to jail. She pleaded guilty because she was guilty and received three years of probation. On cross-examination Melinda Hebert continued to say that she pleaded guilty to possession with intent to distribute cocaine just as Lemar did; however, the State pulled the record and showed her the guilty plea form, which indicated that she pleaded guilty to simple possession of cocaine. She said that she was then testifying that she and her boyfriend were selling the cocaine. Her brother was not involved. She conceded that the defendant visited her apartment often to play with her son, and he had been in and out of her apartment on December 19, 1997. Melinda Hebert answered affirmatively when she was asked whether she would tell the jury whatever would help her brother. She again stated that her brother "didn't" sell drugs from the porch, but Lemar did sell drugs there. On redirect Melinda Hebert stated that the defendant did not live with her.
Ojore Lemar testified that he lived at 2509 St. Ann Street with Melinda Hebert and their child. He said that the defendant did not live with him; he lived with Melinda Hebert's father in the upstairs apartment. He and Melinda were arrested inside the apartment on December 19, 1997, but the defendant had been arrested outside and taken inside. Lemar stated that he pleaded guilty to possession with intent to distribute cocaine and received a five-year sentence, which he was serving. He said that the cocaine found in the apartment belonged to him, not the defendant. On cross-examination Lemar said that he was out on the porch on December 19, 1997 and made a sale, but the defendant was not there at that time. He bought the cocaine already in rock form and just broke it into small pieces. Lemar testified that Melinda Hebert and the defendant never helped at all. Lemar admitted that he had been arrested before for selling drugs and convicted of possession of cocaine. He kept the drugs that he was selling in his mouth. When the police *1048 arrived, he took them out and put them on the coffee table in the living room. He conceded that he had nothing to lose by claiming the drugs after he had pleaded guilty and been sentenced.

ERRORS PATENT
A review of the record reveals an error patent. On February 4, 2000 the defendant was sentenced to fifteen years at hard labor. The same day he filed motions for new trial and for a post-verdict judgment of acquittal. Although the minute entry indicates that the motions were filed and denied prior to sentencing, the transcript shows that the trial court sentenced the defendant, and then the defense motions were filed and denied.[3] The trial court then sentenced the defendant again to fifteen years at hard labor. The defendant then filed motions for reconsideration of sentence and for an appeal. The trial court denied the motion to reconsider sentence and granted the motion for appeal. Then a multiple offender hearing was held and the trial court found the defendant to be a triple offender and sentenced him to life imprisonment without benefit of probation, parole, or suspension of sentence. The trial court did not observe the twenty-four hour delay required after the denial of the defendant's motion for new trial before sentencing him as prescribed by La. C.Cr.P. art. 873, and there is no indication that the defendant expressly waived the delay.
As noted above, it appears from the February 4, 2000 transcript that the motion for new trial was not filed properly prior to sentencing. Therefore, it is not clear whether there was a timely filed motion for a new trial before the trial court when it denied that motion. Regardless, the defendant was sentenced on the same day that the trial court denied his motion for a new trial.
In State v. Augustine, 555 So.2d 1331, 1335 (La.1990), the Louisiana Supreme Court held that failure to waive the twenty-four hour delay voided the defendant's sentence, if the defendant attacks his sentence, although the defendant fails to specifically allege this failure as an error on appeal. However, in State v. Seals, 95-0305 (La.11/25/96); 684 So.2d 368, 380, cert. den., Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997), the Louisiana Supreme Court found that reversal of a sentence for failure to observe the statutory twenty-four hour delay was not warranted in the absence of prejudice. Noting the mandatory nature of the sentence imposed on the defendant, the court affirmed the sentence. In State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95); 661 So.2d 1078, 1083, writ denied 95-2557 & 95-2475 (La.2/2/96), 666 So.2d 1087, this court held that failure to observe the statutory delay was harmless error where the sentence to be imposed was mandatory.
State v. Hayden, 98-2768, p. 5 (La.App. 4 Cir. 5/17/00), 767 So.2d 732, 738.
In this case the original sentence imposed on September 20, 1999 should have been vacated prior to sentencing the defendant as a multiple offender. The issue relating to the court's failure to vacate the original sentence is discussed under assignment of error number 3.
On the same day, September 20, 1999 the trial court imposed the defendant's sentence as a triple offender without waiting the mandatory twenty-four hours under La.C.Cr.P. art. 873. Because the *1049 defendant's sentence of life imprisonment was a mandatory sentence under La. R.S. 15:529.1, the court's failure to observe the statutory delay would be considered harmless error.[4]

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1
The defendant argues that the evidence was insufficient to support his conviction for possession with intent to distribute cocaine. He claims that the State did not meet its burden because only Officer Ceravolo testified about one alleged transaction involving the defendant. The officer said that he saw the defendant take what appeared to be currency and give to the alleged purchaser what the officer believed was contraband. However, Officer Ceravolo did not say that he could see the cocaine or the currency during the alleged transaction. The defendant notes that the officers did not stop the purported buyer because of a lack of manpower, but seventeen officers executed the search warrant. He notes that no drugs were retrieved from his person, and he did not live at 2509 St. Ann Street, apartment A, the apartment searched by the officers.
This Court set out the well-settled standard for reviewing convictions for sufficiency of the evidence: State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. *1050 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
State v. Jones, 99-0861 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 35, quoting State v. Ragas, 98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228. See also State v. Ash, 97-2061 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, writ denied, 99-0721 (La.7/2/99), 747 So.2d 15.
To support a conviction for possession of a controlled dangerous substance with intent to distribute, the State must prove that the defendant knowingly and intentionally possessed the contraband and that he did so with the intent to distribute it. State v. Jones, 99-0861, 769 So.2d at 35; State v. Smith, 94-1502, (La. App. 4 Cir. 1/19/95), 649 So.2d 1078, 1081; La. R.S. 40:967(A)(1). The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient. See State v. Trahan, 425 So.2d 1222 (La.1983). Determination of whether a defendant had constructive possession depends on the circumstances of each case. State v. Ballansaw, XXXX-XXXX (La.App. 4 Cir. 9/06/00), 769 So.2d 656.
The mere presence of a defendant in the area where the narcotics were found is insufficient to prove constructive possession. See State v. Collins, 584 So.2d 356 (La.App. 4 Cir.1991). Nevertheless, a person found in the area of the contraband is considered in constructive possession if it is subject to his dominion and control. State v. Trahan, 425 So.2d at 1222. The defendant can have constructive possession if he jointly possesses the drug with a companion and if he willfully and knowingly shares with his companion the right to control of the drugs. State v. Walker, 514 So.2d 602 (La.App. 4 Cir. 1987).
There are several factors to be considered in determining whether the defendant exercised dominion and control so as to constitute constructive possession. Those factors include: the defendant's knowledge that illegal drugs were in the area; the defendant's relationship with the person in actual possession; the defendant's access to the area where the drugs were found; evidence of recent drug use; the defendant's proximity to the drugs; and any evidence that the residence was frequented by drug users. State v. Chambers, 563 So.2d 579 (La. App. 4th Cir.1990); State v. Tasker, 448 So.2d 1311 (La.App. 1st Cir.1984), writ denied 450 So.2d 644 (La.1984).
State v. Alford, 99-0299 (La.App. 4 Cir. 6/14/00), 765 So.2d 1120, 1126.
Specific intent is defined as that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). See also State v. Scott, 99-0241, p. 7 (La.App. 4 Cir. 1/5/00), 752 So.2d 255; State v. Hall, 98-0667, p. 14 (La.App. 4 Cir. 12/22/99), 750 So.2d 1105, writ denied, 777 So.2d 475, (La.2000). Specific intent need not be proven as fact, but may be inferred from the circumstances and actions of the defendant. State v. Ricard, 98-2278 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, writ denied, Richard v. State, 775 So.2d 1078, (La.2000). Specific intent to distribute may be established by proving circumstances surrounding defendant's possession which give rise to a reasonable inference of intent to distribute. State v. Johnson, 99-1053 (La. App. 4 Cir. 6/14/00), 766 So.2d 572; State v. Dickerson, 538 So.2d 1063 (La.App. 4 Cir. 1/30/89), habeas corpus dismissed *1051 by, Dickerson v. Stalder, 975 F.Supp. 831 (E.D.La.10/20/97).
Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred. State v. Fuller, 414 So.2d 306 (La.1982); State v. Phillips, 412 So.2d 1061 (La.1982); La. R.S. 15:445. In State v. House, 325 So.2d 222 (La.1975), this court discussed certain factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
State v. Johnson, 766 So.2d at 577, quoting State v. Hearold, 603 So.2d 731, 735-36 (La.1992). See also State v. Crosby, 98-0372 (La.App. 4 Cir. 12/2/99), 748 So.2d 502, writ denied, 99-3555 (La.1/28/00), 753 So.2d 833.
Here Officer Ceravolo testified that the officers had set up a surveillance of 2509 St. Ann Street. Officer Ceravolo said that he observed the defendant, who was standing on the front porch of the residence, as another male, who handed the defendant what appeared to be currency, approached him. The officer saw the defendant go into the apartment, return moments later with a small object, and hand the small object to the other male, who walked away. Officer Ceravolo said that based on his prior observations and other information, he believed that he had witnessed a narcotics transaction. He testified that he also observed the codefendant, Ojore Lemar, involved in what appeared to be a hand-to-hand narcotics sale on the porch.
The officer observed that the defendant went inside the apartment to obtain the contraband/object, which he turned over to the other male for what appeared to be currency. From those facts it can be inferred that the defendant, as well as his sister and her boyfriend who lived in that apartment, was in constructive possession of the drugs. Officer Ceravolo saw the defendant involved in what the officer believed to be a drug transaction. The cut-off baggies and Ziploc bags inside the apartment indicated that the contraband was being packaged and distributed.
Viewing the evidence in the light most favorable to the State, there was sufficient evidence to convict the defendant of possession with intent to distribute cocaine.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 2
The defendant argues that the trial court did not consider the criteria of La. C.Cr.P. art. 894.1 and that his life sentence is excessive and cruel and unusual punishment. He notes that the court did not mention mitigating or aggravating circumstances prior to sentencing him. Rather the trial court declared that it was aware of the statutory provision of La. R.S. 15:529.1 that mandated that the defendant as a triple offender would receive a sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. The defendant notes that his two prior convictions were not violent crimes or drug-related; one was a simple escape charge and the other involved a possession *1052 of a stolen automobile. He argues that the trial court should have sentenced him to a lesser sentence under State v. Dorthey, 623 So.2d 1276 (La.1993).
In State v. Martin, 98-1507, p. 9 (La. App. 4 Cir. 4/5/00), 788 So.2d 1, 20-21, this Court set out the settled law relating to excessive sentence claims:
La. Const. art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.4/8/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Brady, 97 1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds; State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2982 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988).
A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment or is the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Sepulvado, 367 So.2d 762 (La.1979). The trial court has the authority to reduce a mandatory minimum sentence for a particular offense and offender if the sentence would be constitutionally excessive. State v. Pollard, 93-0660 (La.10/20/94), 644 So.2d 370; State v. Dorthey, 623 So.2d at 1276; State v. Richardson, 97-1995 (La. App. 4 Cir. 3/3/99), 729 So.2d 114, writ denied, 747 So.2d 1119 (La.1999). In cases involving mandatory sentences under the Habitual Offender Law, such sentences are presumed constitutional and the defendant bears the burden of rebutting the presumption that the mandatory minimum sentence is constitutional. State v. Jenkins, 98-2772 (La.App. 4 Cir. 3/15/00), 759 So.2d 861; State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672.
Very recently the Louisiana Supreme Court discussed the use of Dorthey to impose a sentence below the statutory minimum in State v. Lindsey, 99-3256, pp. 4-5 (La.10/17/00), 770 So.2d 339[5], on remand to, State v. Webster, 98-0807 (La. App. 4 Cir. 12/20/00), 775 So.2d 661, cert. filed, 00-7959 (La.1/12/01):
[W]e acted to curtail the district court's use of Dorthey in cases in which it appeared that the courts were simply substituting their judgment of what constituted an appropriate penalty for that of the Legislature. See, e.g., State v. Handy, 96-2505 (La.1/5/97), 686 So.2d 36; State v. Bastian, 96-2453 (La.12/13/96), 683 So.2d 1220; State v. Randleston, 96-1646 (La.10/4/96), 681 So.2d 936; State v. Wilson, 96-1600 (La.10/4/96), 680 So.2d 1169; State v. Johnson, 96-1263 (La.6/28/96), 676 So.2d 552; State v. Gordon, 96-0427 (La.5/10/96), 672 So.2d 669; State v. Kelly, 95-2335 (La.2/2/96), 666 So.2d 1082; State v. Lombard, 95-2107 (La.11/27/95), 662 So.2d 1039.
This effort culminated in Johnson, where we set out guidelines for when and under what circumstances courts *1053 should exercise their discretion under Dorthey to declare excessive a minimum sentence mandated by the Habitual Offender Law. We held that "[a] court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality" and emphasized that "departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." State v. Johnson, supra at 676, 677. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id. (Citing State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (Plotkin, J., concurring))[6]
In making this determination, we held that "while a defendant's record of nonviolent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive." Id. This is because the defendant's history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses. Id.
In addition, we held that the trial judge must keep in mind the goals of the statute, which are to deter and punish recidivism, and, we instructed that the sentencing court's role is not to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders, but rather to determine whether the particular defendant before it has proven that the minimum sentence is so excessive in his case that it violates Louisiana's constitution. Id. at 677.
Finally, we held that if a trial judge finds clear and convincing evidence which justifies a downward departure, he is not free to sentence the defendant to whatever sentence he feels is appropriate under the circumstances, but must instead sentence the defendant to the longest sentence which is not constitutionally excessive. Id.

At the sentencing the trial court declared that it was required by law to impose a life sentence without benefit of probation, parole, or suspension of sentence under La. R.S. 15:529.1(A)(b)(ii). The trial court did not determine that the mandatory life sentence was constitutionally excessive in this case. Although the defendant argues that a deviation from the mandatory life sentence required by La. R.S. 15:529.1 would have been appropriate, the defense presented nothing at the sentencing and made no argument regarding a sentence under Dorthey.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 3
The defendant correctly argues that the trial court did not vacate the original fifteen-year sentence prior to sentencing the defendant as a triple offender. The February 4, 2000 minute entry indicates that the trial court vacated the first sentence before resentencing the defendant; *1054 however, the February 4, 2000 transcript does not show that the trial court vacated the original sentence before sentencing the defendant to life. When there is a conflict between the minute entry and the transcript, the transcript controls. State v. Harris, 98-2932 (La.App. 4 Cir. 5/3/00), 761 So.2d 662; State v. Jones, 557 So.2d 352 (La.App. 4 Cir.1990).
The failure of the trial court to vacate a defendant's original sentence before sentencing him as a habitual offender is a patent error requiring that the habitual offender sentence be vacated and the case remanded for resentencing. State v. Mims, 97-1500 (La.App. 4 Cir. 6/21/00), 769 So.2d 44; State v. Anderson, 97-2587, pp. 2-3 (La.App. 4 Cir. 11/18/98), 728 So.2d 14, 17.
For the foregoing reasons, the defendant's conviction is affirmed. His sentence to life imprisonment as a triple offender is vacated and the case remanded for resentencing.
CONVICTION AFFIRMED; REMANDED FOR RESENTENCING.
NOTES
[1] The State also charged Ojore Lemar and Melinda Hebert with possession with intent to distribute cocaine. Lemar pleaded guilty and was sentenced to five years at hard labor. Hebert pleaded guilty to the amended charge of simple possession of cocaine and was sentenced to three years suspended.
[2] According to the March 2, 1998 minute entry, the defendant pleaded not guilty on that date as well as on March 13, 1998.
[3] Under La.C.Cr.P. arts. 821 and 853 the motions had to be filed and disposed of prior to sentencing.
[4] Because the original sentence of fifteen years was not vacated, the enhanced sentence should nonetheless be vacated.
[5] In Lindsey the Supreme Court consolidated two writs from this Court's rulings on appeal. The Supreme Court reversed this Court's decision reversing Webster's life sentence as a triple felony offender guilty of purse snatching (remanding it to this Court for reconsideration) and affirmed this Court's opinion affirming Lindsey's life sentence as a fourth offender guilty of simple robbery.
[6] writ denied, 669 So.2d 1223 (La.1996)