1 MAMES F. McKAY III, Judge.
STATEMENT OF THE CASE
The defendant Macy Alvey III was charged by bill of information on December 4, 2001, with theft of property valued at five hundred dollars or more, a violation of La. R.S. 14:67(B)(1). The defendant pleaded not guilty at his December 19, 2001 arraignment. The trial court denied the defendant’s motion to suppress the statement and evidence on January 11, 2002. The defendant was tried by a six-person jury on February 7, 2002, and found guilty of the lesser offense of theft of property valued at three hundred dollars or more but less than five hundred dollars. On March 8, 2002, the trial court denied the defendant’s motion for post verdict judgment of acquittal. That same date the defendant pleaded guilty to being a second-felony habitual offender and was sentenced to eighteen months at hard labor, without benefit of probation or suspension of sentence. The trial court granted the defendant’s motion for appeal on March 15, 2002, permitting the defendant to remain free on an appeal bond. The defendant filed a motion to reconsider sentence on March 28, 2002, which the trial court denied.

\ .FACTS

The defendant was convicted of the theft of a truck bed coyer belonging to Willie T. (jujdry
New Orleans Police Officer Brian Rei-necke arrested the defendant on October *398 17, 2001.[1] Officer Reinecke was dispatched to a disturbance call at the defendant’s address. Upon arrival, the victim, Willie Guidry, informed officers that parts to his truck, which had been stolen the previous day, were in the defendant’s backyard. The defendant advised officers that he had taken a truck bed cover off an abandoned truck. The defendant took the officers into his backyard and showed them the truck cover. They arrested him for possession of stolen property. Officer Reinecke acknowledged that the defendant did not offer any resistance. Officer Rei-necke admitted that he did not see the victim’s truck.
Officer Eddie Demma testified similarly to Officer Reinecke. He responded to the disturbance call at the defendant’s residence, and was advised by the defendant that he took the truck bed cover because he thought it was an abandoned vehicle.
Willie Guidry testified that in October 2001 he lived on Haynes Boulevard, and owned a 1993 Chevrolet pickup truck. He reported his truck stolen on October 16, 2001. Police notified Guidry the next day that his truck had been recovered — in a vacant lot located around the corner from the defendant’s residence. Guidry asked around and was directed to the defendant’s residence, located approximately one-and-a-half miles from his own residence. Gui-dry knew the defendant by name and face; he had known the defendant’s father, who often had his children with 13him. Guidry said the defendant had complimented him once on his truck. After his truck was stolen, Guidry went to the defendant’s residence. He observed his truck bed cover in the back yard, and notified police. Gui-dry said his customized truck was in beautiful condition, similar to show quality condition. It was in that condition the night before he discovered it had been stolen. He estimated the price of the truck cover at $675; he purchased it the previous May.
The defendant testified on his own behalf. He admitted a 1999 conviction for possession of stolen property. He passed by the truck sitting in an open field as he took his mother to work. It had no taillights, the windows were down, and grass was growing up around it. He said it looked like the truck had not been “messed with” in a while. There were piles of trash at the site, such as tires and old automobile gas tanks. The defendant characterized the area as a dump site. It was approximately five blocks from his residence. The defendant said he was a “Chevrolet man,” that he had Chevrolet trucks in his backyard, and indicated that he knew the truck bed cover would fit one of his trucks, i.e., “the parts are interchangeable.” After dropping off his mother at work, the defendant returned and removed the truck bed cover, put it on top of his car, and drove it back to his residence.
The defendant admitted knowing Willie Guidry through the defendant’s father. However, he denied ever having talked to Guidry about Guidry’s truck. The defendant explained that he had a brother one year younger than him who was the “spitting image” of him, and said they were always being confused for one another. The defendant indicated that it had been at least a couple of years since he had last seen Guidry. The defendant said he would not have taken anything from the truck had he known it belonged to Guidry. He had no grudge against Guidry, |4and acknowledged that Guidry was a friend of *399 the family. The defendant replied in the negative when asked whether he had any hardware to mount the truck bed cover.
The defendant stated on cross-examination that he had never seen Willie Guidry’s truck before. He had known Guidry to have either a gray Blazer or an old gray and red Chevrolet pickup truck. Guidry and the defendant’s father, both mechanics, used to work for the same man. The defendant said he had handed Guidry tools, indicating that he had helped out Guidry in his work. He had known Guidry since he was thirteen or fourteen years old. The defendant replied in the affirmative when asked whether this was the first time he had stopped and taken something from a vehicle he saw. He said he did not pass by the site where the truck was located everyday, but noted that it was always full of junk.
Willie Guidry was recalled by the defendant as a witness. He admitted that the defendant and his brother looked alike. However, Guidry said he knew the defendant better than he knew the defendant’s brother. While he did not see them very much anymore, at one time he used to see them everyday. Guidry was questioned as to whether it could have been the defendant’s brother who complimented him on his truck one day. Guidry first said, “No; not really.” He said that he would have known one from the other, although he conceded that their features were alike.
Willie Guidry said on cross-examination by the State that there was no doubt it was the defendant who complimented him on the truck sometime after May 2001. Guidry said his truck was one of a kind, and noted that the point of customizing it was to make it look unique.

\ ^ERRORS PATENT

A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues that the evidence was insufficient to support his conviction, specifically, that the evidence was insufficient to show that he had the requisite specific intent to permanently deprive Willie Gui-dry of the truck bed cover.[2]
This Court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent *400 necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such | fthat every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
The defendant was convicted of theft of property valued at three hundred dollars or more but less than five hundred dollars. Theft is defined in La. R.S. 14:67(A) as follows:
A. Theft is the misappropriation or taking of anything of value, which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
La. R.S. 14:67(B) sets the grade of the offense of theft, providing for different sentences according to the value of the misappropriation or taking. La. R.S. 14:67(B)(2) sets the grade of the offense for which defendant was convicted, where the misappropriation or taking amounts to a value of three hundred dollars or more, but less than a value of five hundred dollars or more. The defendant does not argue that the State failed to prove the value of the misappropriation or taking necessary to support his conviction.
The defendant frames his argument as one directed to intent. Theft is a specific intent crime. State v. Hampton, 2000-1002, p. 9 (La.App. 4 Cir. 1/24/01), 782 So.2d 1045, 1052. The specific intent factor of the offense relates to permanently depriving the owner of whatever may be the subject of the misappropriation or taking. Specific intent is defined as “that state of Lmind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1); State v. Scott, 99-0241, p. 7 (La.App. 4 Cir. 1/5/00), 752 So.2d 255, 258-259. Specific intent need not be proven as fact, but may be inferred from the circumstances and actions of the defendant. State v. Hebert, 2000-1052, p. 12 (La.App. 4 Cir. 4/11/01), 787 So.2d 1041, 1050, writ denied, 2001-1804 (La.3/15/02), 811 So.2d 905.
The defendant’s argument is that he could not have specifically intended to commit the crime of theft because of a mistake of fact — he believed the truck was abandoned. La. R.S. 14:16 states:
Unless there is a provision to the contrary in the definition of a crime, reason *401 able ignorance of fact or mistake of fact which precludes the presence of any mental element required in that crime is a defense to any prosecution for that crime.
Reasonable ignorance can be a defense under La. R.S. 14:16, but not “unreasonable ignorance.” State v. Henderson, 296 So.2d 805, 807 (La.1974). State v. Rabalais, 99-623 (La.App. 3 Cir. 1/26/00), 759 So.2d 836, presents a case where the court found a mistake of fact and reversed the conviction of a woman convicted of the theft of a pickup truck that was in the possession of her father-in-law. The defendant believed she had a one-half ownership interest in the truck by virtue of a donation inter vivos purportedly executed by her husband, who was serving a three-year sentence for committing a battery on her when she took the truck. The appellate court found that the defendant’s husband had lulled his wife into believing she owned the interest in the truck, and that she reasonably believed she did.
a In the instant case, Willie Guidry testified that at the time his customized 1993 Chevrolet pickup truck was stolen it was in a “beautiful” condition, similar to a show-quality type of truck. He saw it at 11:00 p.m. on October 15, 2001, and discovered at 6:30 a.m. the next morning that it had been stolen. The defendant was found in possession of the truck bed cover on October 17, 2001; he had removed it from the truck that morning. It appears undisputed that the truck was sitting in an empty trash-strewn lot. The defendant said the truck had scratches on it. Willie Guidry admitted that when his truck was recovered it was not in the same condition it had been in before it was stolen, noting that it was scratched up. Officer Eddie Demma said the truck bed cover taken by the defendant was in fair/good condition. There was no direct testimony that the truck had been stripped of, for instance, its tires and wheel rims. It was obvious the track had been abandoned. However, common sense would lead any reasonable person to conclude that this particular truck had been abandoned by the person or persons who stole it, not by its legal owner.
Viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the defendant took the bed cover, valued at three hundred dollars or more, but less than five hundred dollars, that he knew belonged to another, without the other’s consent, with an intent to permanently deprive the other person of the bed cover.
There is no merit to this assignment of error.

\ ^ASSIGNMENT OF, ERROR NO. 2

In his second assignment of error, the defendant claims that his eighteen-month sentence is constitutionally excessive under the circumstances. A minute entry reflects that the defendant timely filed his motion to reconsider sentence twenty days after sentencing, although no grounds for the claim are reflected in the minute entry and the record contains no written motion to reconsider.
A statutorily permissible sentence under the Habitual Offender Law may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993). However, the entire Habitual Offender Law has been held constitutional and, thus, the sentences provided under it *402 for habitual offenders are also presumed to be constitutional. Johnson, 97-1906 at pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must show by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Lindsey, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343; Johnson, 97-1906 at p. 8, 709 So.2d at 677. “Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations.” Johnson, 97-1906 at p. 9, 709 So.2d at 677.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. Robinson, 98-1606, p. 12 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 127. If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Ross, 98-0283, p. 8 (La.App. 4 Cir. 9/8/99), 743 So.2d 757, 762; State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184,185.
However, in State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, this court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
96-1214 at p. 10, 708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
ItiOn appellate review of sentence, the only relevant question is “ “whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ” State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La.1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const, art. I, § 20, i.e., when it imposes “punishment disproportionate to the offense.” State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sen *403 tence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentenc-ing is appropriate only when “there appear[s] to be a substantial possibility that the defendant’s complaints of an excessive sentence ha[ve] merit.” State v. Wimberly, 414 So.2d 666, 672 (La.1982).

Id.

The defendant first submits that his sentence should be vacated simply because the trial court failed to state for the record that it considered the sentencing factors under La.C.Cr.P. art. 894.1. However, in such a case a remand for resentencing is appropriate only where there appears to be a substantial possibility that the defendant’s complaints of excessive sentence have merit. Soraparu, supra.
A defendant convicted of theft of property valued at three hundred dollars but less than five hundred dollars is subject to imprisonment with or without hard labor for not more than two years, or may be fined not more than two thousand dollars, or both. La. R.S. 14:67(B)(2). As a second felony habitual offender, defendant was subject to imprisonment for not less than one year and not more than four years (one-half of the two-year maximum and twice the two-year maximum for a first offense). La. R.S. 15:529.1(A)(l)(a).
|12In State v. Pratt, 95-762 (La.App. 5 Cir. 2/27/96), 671 So.2d 21, the court found that a twenty-four month hard labor sentence for theft of property valued at over one hundred dollars but less than five hundred dollars was not excessive,[3] where the defendant was a forty-one-year-old second-felony offender, had an extensive record, and was on parole when he committed the theft of the handgun from the home of an acquaintance.
In State v. Washington, 414 So.2d 313 (La.1982), the court held that a six-year sentence for theft of property valued at five hundred dollars or more, where the maximum sentence was ten years, was not excessive. The defendant was also fined $1,000 dollars. He had pleaded guilty in exchange for the State’s dropping a burglary charge. Also, at the time of the theft the defendant was serving a one-year probation for a prior theft.
In this case the defendant, who was almost twenty years old at the time he was sentenced, represented at the sentencing hearing that he had recently completed a three-and-one-half-year course of chemotherapy for leukemia, and required bone marrow testing every four to six weeks to determine whether he continued to be in remission. It appears from the record that the trial court became aware of the defendant’s condition only after the eighteen-month sentence had been imposed. The defendant conceded that his prior felony conviction, for possession of stolen property, resulted in only probation, which he had completed. The trial court sentenced the defendant to eighteen months, six months longer than the one-year minimum sentence.
Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Sepulvado, supra. The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
Generally, the reviewing court must determine whether the trial judge adequately *404 complied with the guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982). If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case. State v. Egana, 97-0318 (La.App. 4 Cir. 12/3/97), 703 So.2d 223. The articulation of the factual basis for the sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions.
After the trial judge sentenced defendant to eighteen-months imprisonment, defense counsel informed the court, while moving for an appeal bond, that the defendant was under chemotherapy for his leukemia and would require continuous medical monitoring for his condition. The trial court granted the appeal bond. The judge expressed his concern for the defendant’s medical condition but nevertheless imposed the eighteen-month sentence.
In State v. Fobbs, 99-1024 (La.9/24/99), 744 So.2d 1274, the Supreme Court, in a per curiam decision, stated:
114Our observation in State v. Dorthey, 623 So.2d 1276, 1280 (La.1993), that “the review of sentencing, including sentencing under R.S. 15:529.1, is a long established function of the judicial branch,” does not, nor did we intend it to, restrict the sentence review principles espoused in that decision solely to the mandatory minimum penalties provided by La. R.S. 15:529.1. See State v. Davis, 94-2332, pp. 11-12 (La.App. 1 Cir. 12/15/96), 666 So.2d 400, 407-08. As we explained in State v. Sepulvado, 367 So.2d 762, 766 (La.1979), La. Const. Art. 1, § 20 provides “the basis for extending the court’s control over the entire sentencing process.” (emphasis added).
Fobbs was remanded to this Court, which ruled on whether the trial court could sentence the defendant to an eight year suspended sentence and five years active probation despite the fact that the substantive statute prohibited suspension for the first five years of the sentence. The Court noted that in State v. Barberousse, 480 So.2d 273 (La.1985), the Supreme Court had suggested that a mandatory minimum sentence that was not the result of a multiple bill might be unconstitutional. The court affirmed the sentence considering the facts and circumstances showing that imposition of the mandated minimum sentence would have made no measurable contribution to the acceptable goals of punishment. State v. Fobbs, 99-0073 (La.App. 4 Cir. 11/24/99), 747 So.2d 1232.
Clearly, based on the above jurisprudence, the trial court can deviate from the mandatory minimum sentence under Dor-they. The defendant had a valid argument that in light of his medical condition and the fact that he must be monitored by his doctors for a number of years in his immediate future, placing the defendant in prison for one and one half years may be disproportionate to his actions. Accordingly, we remand the matter to the trial court for Dorthey considerations.
For the reasons stated above we affirm the defendant’s conviction. The defendant’s sentence is vacated and this case is remanded for resentencing after a | ^determination of whether the eighteen-month sentence imposed by the trial court would be excessive under Dorthey.
CONVICTION AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR RESENTENCING.

. Officer Reinecke incorrectly replied in the affirmative when asked whether he had arrested the defendant on October 16, 2001.

. Defendant's Assignments of Error designates this assignment as one that the trial court erred in denying his motion for post verdict judgment of acquittal on the ground that the evidence was insufficient to support his conviction. This presents the issue of sufficiency of the evidence. See La.C.Cr.P. art. 821(B).

. This was the same grade of theft as in the instant case; the minimum value was increased to three hundred dollars by Acts 1999, No. 1251, § 1.